UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

Plaintiff,

v. Case No. 26-cv-869-pp

ERIN WENGER, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 1)**

---

Plaintiff Glen R. Jeffery, Jr., who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, screens his complaint, dkt. no. 1, and resolves his motion for preliminary injunction, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 27, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $0.43. Dkt. No. 6. The court received that fee on June 16, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued Erin Wenger, Rachel Matushak, Brandon Fisher, Marietta Wotjecka, Raquel L. Rose, Tonya Moon, Brad Kolb, Emily Davidson and Cindy O'Donnell. Dkt. No. 1 at 1. The plaintiff alleges that on May 15, 2024, while on clinical observation, he attempted to commit suicide by inserting five pen inserts into his urethra. Id. at 2. The plaintiff states that he was taken from his cell to the "RHU [Restricted Housing Unit] strip cell" where Dr. Wotjecka told him that he (the plaintiff) needed to remove the pens from his

penis. Id. The plaintiff allegedly responded that he couldn't remove them without further injuring himself. Id. The plaintiff states that Dr. Wotjecka told him that she would talk to the health services unit (HSU) and see if they would remove the pens and that if the HSU could, there would be no need to place the plaintiff into a restraint bed. Id.

The plaintiff alleges that defendants Nurses Wenger and Matushak came to his cell front and asked him if he could remove the pens himself. Id. The plaintiff states that he told them that he could not. Id. The plaintiff alleges that Matushak and Wenger lied and told the Psychological Services Unit (PSU) that the plaintiff would not let them assess him. Id. According to the plaintiff, Matushak and Wenger said that they would not send him to the emergency room, prematurely determined that his condition was not a risk to his health and recommended that he be placed in five-point restraints. Id. The plaintiff states that Matushak knew that the plaintiff had a medical contraindication to lying flat. Id. Dr. Wotjecka allegedly placed the order to have the plaintiff placed into the restraint bed, knowing that his condition was worsening and that the placement would eventually become torturous from the pain that he would feel when his bladder filled up while strapped down lying flat. Id. at 2-3.

The plaintiff alleges that at 4:00 p.m., defendant Lieutenant Fisher and several officers placed him into the restraint bed. Id. at 3. Fisher allegedly provided a mattress that had been used during a cell extraction in which chemical agents directly contacted the mattress, and the mattress burned the plaintiff's skin. Id. The plaintiff states that Fisher ignored his concerns about

the mattress. Id. The plaintiff alleges that he was left naked, strapped to the mattress with his genitals exposed and people who walked by could see him, including a female officer who conducted fifteen-minute observation rounds. Id. The plaintiff states that Wenger gave him several Ensure shakes even though she knew that he was lactose intolerant. Id.

The plaintiff alleges that at 9:00 p.m., after he had been saying for three hours that his bladder hurt and felt like it was going to explode, Fisher, Wenger and others came to the cell "to do range of motion and vitals." Id. After the plaintiff told Wenger that his bladder hurt and that he believed it was about to explode, she conducted a bladder scan to see how full it was. Id. She allegedly said that she was going to use a catheter on the plaintiff despite knowing that this would push the pens into his bladder. Id. The plaintiff states that he told Wenger and Fisher that he would file a lawsuit against them "for these cruel acts" and Wenger said that she would not send him to the emergency room and walked out of the cell. Id. The plaintiff states that Fisher followed Wenger into the hallway and told her that he was sending the plaintiff to the hospital for medical treatment because he saw that the plaintiff was in immense pain. Id.

The plaintiff alleges that at 12:00 a.m., he was taken to the Waupun Memorial Hospital where the pen inserts were surgically removed and his bladder was drained. Id. The plaintiff states that while at the hospital, he was told that his bladder was spasming and contracting due to having too much urine inside of it; he was then discharged back to Waupun. Id. The plaintiff states that he developed kidney stones that hurt when passing through his

urethra and a UTI that burned. Id. The HSU at Waupun allegedly did not treat those conditions. Id.

The plaintiff alleges that on May 24, 2024, he tried to file an inmate complaint by handing it to defendant Officer Rose between 7:00 and 8:00 a.m. Id. Rose allegedly told the plaintiff that she would place his complaint into the "ICE box." Id. at 3-4. The plaintiff states that the institution complaint examiner (ICE) misplaced, lost or deliberately discarded his complaint. Id. at 4. He says that he wrote to defendant Tonya Moon and asked her why his complaint had not been filed and she said that the ICE Department had not received a complaint. Id. The plaintiff alleges that defendant Rose or defendant Kolb discarded his complaint which prevented him from exhausting his administrative remedies. Id. The plaintiff states that when he appealed the decision to the corrections complaint examiner (CCE), defendant Davidson turned a blind eye to the misconduct of discarding his complaint, fabricated the findings and falsified evidence. Id. Defendant O'Donnell also allegedly turned a blind eye to the plaintiff's claims and dismissed his complaint. Id.

For relief, the plaintiff seeks declaratory relief and monetary damages. Id. at 4-5. He also seeks a preliminary injunction prohibiting Matushak from having any further medical contact with him and using her position as a nurse to allow herself exclusive privilege over the plaintiff's healthcare as his case manager. Id. at 5. The plaintiff states that Matushak's position allows her the power to deny him adequate medical care. Id. He says that the injunction is necessary to protect him from Matushak. Id.

C. Analysis

The plaintiff claims that the defendants acted with deliberate indifference to his serious medical needs. "The Eighth Amendment's ban on 'cruel and unusual punishments' obligates prison officials to provide medical care to prisoners in their custody." Sanders v. Moss, 153 F.4th 557, 567 (7th Cir. 2025) (quoting Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 234 (7th Cir. 2021)); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Sanders, 153 F.4th at 567 (quoting Estelle, 429 U.S. at 104. The plaintiff must satisfy two prongs to prove a deliberate indifference claim. First, he must show that he suffers from an "objectively serious medical condition." Id. (quoting Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)). The plaintiff must also establish that the prison official acted with a "sufficiently culpable state of mind." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see also Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A prison official has a sufficiently culpable state of mind when the official 'knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk.'" Sanders, 153 F.4th at 568 (quoting Farmer, 511 U.S. at 834).

The plaintiff may proceed on an Eighth Amendment medical care claim against defendants Wenger, Matushak, Fisher and Wotjecka in their individual capacities based on allegations that they did not provide him with adequate medical care after he tried to commit suicide by inserting pen inserts into his urethra.

The plaintiff alleges that defendants Rose, Moon, Kolb, Davidson and O'Donnell prevented him from exhausting his administrative remedies regarding his medical care claim. The plaintiff does not allege that these defendants had any role in the medical care claim. Incarcerated individuals have a due process right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). To state a claim for denial of access to the court, the plaintiff must assert that the alleged interference caused actual injury, that is, prevented him from pursuing a legitimate challenge to a conviction, sentence or prison conditions. Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). The plaintiff has not alleged that the actions of defendants Rose, Moon, Kolb, Davidson and O'Donnell prevented him from pursuing a case related to his medical care claim. If the defendants file a motion for summary judgment on exhaustion grounds in this case, the plaintiff may file an opposition brief in which he presents his arguments that he was prevented from exhausting his administrative remedies. Because the plaintiff has not alleged that he suffered an actual injury, he has not stated an access-to-courts claim, and the court will dismiss defendants Rose, Moon, Kolb, Davidson and O'Donnell.

Finally, in his motion for a preliminary injunction, the plaintiff asks the court to issue an order prohibiting Matushak from providing him with medical care. The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555

U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he likely will suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Id. at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

Because the plaintiff is incarcerated, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act (PLRA). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary

authority over the institutions they manage") (internal quotation marks and citation omitted)).

The court has allowed the plaintiff to proceed against Matushak based on allegations that she did not provide him with adequate medical care after he inserted five pen inserts into his urethra. This alleged incident does not warrant injunctive relief prohibiting Matushak from having any involvement in the plaintiff's medical care. The court will deny the plaintiff's motion for preliminary injunction. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.57** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **DENIES** the plaintiff's motion for preliminary injunction. Dkt. No. 1.

The court **DISMISSES** defendants Raquel Rose, Tonya Moon, Brad Kolb, Emily Davidson and Cindy O'Donnell.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Erin Wenger, Rachel Matushak, Brandon Fisher and Marietta Wotjecka. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 6th day of November, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**